## WILLIAM CROSMAN, Administrator, *versus* REUBEN FULLER.

In an action against the maker of a note payable upon the death of a widow, brought by the administrator of the promisee, it was *held*, that parol evidence was admissible to prove, that the note was given upon an agreement previously made between the defendant and promisee, that, if the estimated value of one third of the land of which the widow was dowable, should be expended by the defendant in her support, the note should be void ; that in a conversation in relation to this note subsequently to its execution, in the absence of the defendant, the promisee had declared, that the interest was to be so expended and the principal also, if required, and that the note was dead ; and that upon the death of the widow, the expense of her support by the defendant had exceeded the value of one third of the land.

THIS was assumpsit brought by the plaintiff, as administrator of Turner Fuller, deceased, upon a witnessed promissory note, dated April 22, 1815, made by the defendant for the sum of $ 142, payable with interest after date, to the intestate or his order, upon the death of Lydia Fuller, the widow of Levi Fuller, deceased.

Crosman
v.
Fuller.

The defendant pleaded the general issue. The death of Lydia Fuller, before the commencement of the action, was admitted.

At the trial, before *Wilde* J., the defendant, in order to prove the payment of the note, offered in evidence the following facts :

Levi Fuller died in September, 1814, leaving four sons, viz. Simeon, Amos, Reuben, the defendant, and Turner, the intestate, to whom he devised all his real estate in equal shares, subject only to his widow's right of dower. Immediately after his decease, the sons entered into an agreement, by which Simeon and the defendant contracted to purchase all the interest of Amos and Turner in such real estate, including their reversionary interest, and to support the widow during her life ; and Amos and Turner, on their part, agreed that the interest on the sum of about $500, at which they estimated the value of one third part of the real estate, should be applied to the widow's support, and the principal also, if the interest should prove to be insufficient ; and that if, at the death of the widow, the whole amount thereof should be exhausted, then Simeon and the defendant should pay nothing to Amos and Turner, on account of such third part.

Simeon Fuller testified, that the defendant was to give his note to Turner, and Simeon his note to Amos, for their respective fourths of the third part, and that this was the consideration for which the note in suit was given.

Amos Fuller testified, that he was present when the agreement was made ; that the notes were to be given without interest, and upon condition that if the estimated value of the third part of the real estate should be expended in the support of the widow, the notes should be void, and that whatever amount should be so expended, if less than the whole, should be applied in part payment of such notes.

On February 22, 1817, Simeon gave his note to Amos, in the following words : " For value received, I promise to pay Amos Fuller the sum of one hundred and forty-two dollars, to be paid at the decease of widow Lydia Fuller, and interest after payable ; if the said Lydia Fuller should expend her thirds, this note is void and of no effect ; or if any part is

expended out of said thirds, the fourth part is to come out of this note, which is spent.''

It appeared that Turner, on different occasions, in 1826 and 1829, in conversation in relation to the note in suit, had said, that it was a dead note ; that the interest was to be expended and the principal also, if required, in the support of his mother ; and that he never expected any thing for the note. There was no evidence, that Turner ever told the defendant, that this note was to be so applied, or that the defendant was present when such declarations were made, unless it results from the evidence before stated. The conversation in 1829 was just before the death of Turner, who was then in embarrassed circumstances, and afterwards died insolvent.

Lydia Fuller was supported by the defendant and Simeon during her life ; and upon her death in December, 1833, it appeared, that the expense of her support had exceeded the estimated value of one third of the land, with interest.

This evidence was objected to by the plaintiff, as inadmissible to prove the payment of the note ; but it was admitted by the Court.

The jury returned a verdict for the defendant.

If the Court should be of opinion, that the evidence was admissible, judgment was to be rendered on the verdict ; oth erwise the verdict was to be set aside and the defendant to be defaulted, or a new trial to be granted, at the discretion of the Court.

*Washburn*, for the plaintiff, cited to the point, that the parol evidence was inadmissible to prove, that the note was to be paid in any other manner than was set forth on its face, the evidence not being in affirmance of the note, but in defeasance of it, *Spring* v. *Lovett*, 11 Pick. 417 ; Stark. on Evid. 1002, 1049 ; *Babson* v. *Webber*, 9 Pick. 163 ; *Davenport* v. *Mason*, 15 Mass. R. 85 ; *White* v. *Parkin*, 12 East, 578 ; that a parol agreement, made subsequently to the original written contract, if performed, may defeat the contract in writing, *Munroe* v. *Perkins*, 9 Pick. 298 ; that no such parol agreement was made in the present case after the execution of the note in suit, there being no mutuality on the part of the defendant, Chitty on Contr. 3 ; that if the supplies had been

15 *

furnished to the widow, at the request of the defendant, previously to the execution of the note, this would have been ground for an independent claim by the defendant against the intestate, and should have been filed in set-off, *Sargent* v *Southgate*, 5 Pick. 312.

*Barton*, for the defendant, was stopped by the Court.

*Oct 7th.*    PUTNAM J. delivered the opinion of the Court. This note grew out of a family settlement of the estate of Levi Fuller, deceased. He died seised of real estate, and leaving a widow and four sons, viz. Reuben, Turner, Simeon and Amos. Reuben and Simeon bought the shares of Turner and Amos ; and the consideration of the note in question was the share of Turner in one third of the real estate. The sons, with praiseworthy liberality, agreed to appropriate not only the life estate, but the reversion in one third, for the comfortable support of the widow. Reuben gave his note to Turner for his part ; and Simeon gave his note to Amos for his part. The notes given represented the estate ; and were to be applied, interest and principal if necessary, for the support of the widow, by Reuben and Simeon. This was a parol collateral agreement which has *been executed*. If it had not been, it could not have had the effect to vary or contradict the terms of the note. Thus, if a note were payable in money, a collateral agreement made at the time of the making of the note, that it should be payable in goods, could not be admitted in evidence. But the party having a claim in virtue of an executory collateral contract, must pursue his remedy upon the agreement itself for the breach of it.

But if the holder of a note for money should, after it was made and delivered, agree to accept goods in payment, or if he should agree to allow upon the note the value of any goods or supplies furnished at his request to a third person, such agreement would, when carried into effect, be considered valid. And that in substance is the case at bar. The supplies furnished by the defendant to the widow, were by the consent of Turner, the promisee, to be applied towards the note. And the case finds that they exceeded the amount of the note. The widow lived about eighteen years after the note was given. Simeon took care to insert the agreement in the note

which he gave to Amos for his share of the reversion. But Reuben, the defendant, trusted to the verbal agreement of his brother Turner, the intestate. We have no reason to think, that Turner ever intended to question the validity of the agreement, or the defendant's faithful execution of it. For as late as 1829, a short time before his death, he acknowledged the agreement, and said that "the note was dead." And he said truly ; for the amount of the supplies made to the widow, was considered as paid upon the note ; and they have fully discharged it. We all think the evidence was competent and sufficient to sustain the defence.

The judgment is to be rendered according to the verdict, for the defendant.